# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TAWANA ROCHEA JACKSON, | ) | CASE NO. 5:18-cv-1756 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| | ) | |
| JIM LARIA, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This action is before the Court on the complaint of plaintiff Tawana Rochea Jackson ("Jackson") against defendants Jim Laria (Clerk of Courts) ("Laria"), Ohio's Bureau of Criminal Investigation ("BCI"), and Judge John Holcomb ("Holcomb") (collectively, "defendants"). (Doc. No. 1 ["Compl."].) Jackson brings this action pursuant to 42 U.S.C. § 1983, and claims defendants violated her "[c]ivil and human rights" and "[f]reedom of speech." (*Id.* at 3.[1])

Also before the Court is Jackson's motion to proceed *in forma* pauperis. (Doc. No. 2.) Jackson's motion to proceed *in forma pauperis* is GRANTED.

For the reasons that follow, this case is DISMISSED.

## I. BACKGROUND

According to the complaint, the events giving rise to Jackson's § 1983 claims occurred on April 14, 2002, and continue to the current date. (Compl. at 4.) On that date, Jackson, and her sister had an altercation at their mother's home. (Doc. No. 1-1 at 7.) Charges were brought against Jackson for domestic violence. She claims that in a plea bargain with the prosecutor, she

---

[1] All page number references are to page identification numbers generated by the Court's electronic filing system.

agreed to plead guilty and complete eight sessions of anger management class, and the domestic violence charge would be reduced to disorderly conduct. (*Id.*) Jackson claims that she completed the required classes, but Holcomb did not complete the paperwork showing that she had complied with his orders and, contrary to the plea bargain, the domestic violence stayed on her record for eleven years. (*Id.*) Jackson maintains that she tried to correct the record in 2003, but was told by several municipal court employees to stop harassing the staff or she would be arrested for disorderly conduct. (*Id.* at 7–8.)

Approximately nine years later—on March 26, 2012—Jackson states that she spoke with Holcomb's bailiff about this issue. She claims that Holcomb instructed her to have a seat and he would look into it. (*Id.* at 8.) With respect to Holcomb, Jackson states that:

> This man has literally destroyed my life by not signing a piece of paper 11 years ago, and instead of being remorseful and showing some empathy, he treated me like trash. This was not an honest mistake; this was a malicious form of white supremacy. He wanted [the domestic violence charge] to stay on my record.

(*Id.*)

Jackson states that on April 2, 2012, she petitioned the Office of Disciplinary Counsel with the Ohio Supreme Court and filed a grievance against Holcomb.[2] According to Jackson:

> The Supreme Court handled this situation immediately. They called Judge Holcomb and told him to remove the domestic violence charge off my record immediately. It was removed off of my city background by the next day.[3] It wasn't removed off my state record (BCI) [s]o, the domestic violence charge continued to sit on my record for another 6 years. Because the clerk of courts

---

[2] With respect to this grievance, the disciplinary counsel's office found no evidence that Holcomb violated any applicable code of conduct and it "appears he has simply made decisions with which you disagree." (Doc. 1-3 at 15.) According to Jackson, disciplinary counsel's dismissal of her grievance is "nothing but white supremacy and cover ups. They all stick together." (Doc. 1-1 at 8.)

[3] The Akron Municipal Court's public docket regarding Jackson's criminal case concerning the altercation with her sister may be found at https://courts.akronohio.gov/AkronCaseInformation/cases/criminal/02-CR-03883-001. The public docket indicates "file to court" on March 26, 2012, and, on April 11, 2012, "record to reflect that def pled guilty to dis cond." The Court may take judicial notice of publicly accessible dockets because such records are generally considered not to be subject to reasonable dispute. *See Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 454 (N.D. Ohio 2012) (citations omitted).

failed to notify the Attorney General's office so their office could change their records.

(*Id.* (footnote added).)

According to Jackson, the domestic violence charge remained on her record until 2018 because clerk of courts Laria "failed to correspond with [BCI] in 2012 like the Supreme [C]ourt told them to." (*Id.*) Jackson states that she went to the clerk of the Akron municipal court on July 19, 2018, and the domestic violence charge was removed from her BCI record that same date. She claims that because of the domestic violence charge on her record, she was fired from her employment at the Domestic Violence Project on July 20, 2018. (*Id.* at 8–9.)

Jackson further alleges that BCI "is in cohorts" with the clerk of the Akron municipal court. (Doc. No. 1-2 at 10.) Jackson states that a BCI background check she ordered on herself on June 6, 2016, reflects a felony charge. While Jackson acknowledges that she has a federal felony on her record, she has no state felonies and the federal felony should not appear on her BCI report. (Doc. No. 1-3 at 10.) Moreover, Jackson questions why "these corrupt employees" ran a federal background check when the home health aide agency to which she applied for work only required a BCI check—"who is the guilty party, me or these officials you have assigned to manipulate and fabricate court records and documents." (*Id.*)

Lastly, while it does not appear related to her allegations concerning the issue of the domestic violence charge and federal felony appearing on her BCI record, Jackson also claims that her state criminal record is "clearly based on racial profiling[,]" and a former professor told her "to stop coping [sic] out to these bogus charges." (*Id.*) "This wicked judicial system has been after me for years because I am an educated black woman who happens to know the law." (*Id.*)

Jackson seeks punitive damages between $500,000.00 and $3 million dollars. (Compl. at 5.)

## II.  STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, lacks an arguable basis in law or fact, or seeks monetary relief against a defendant who is immune from such relief. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised upon an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

The dismissal standard for Fed. R. Civ. P. 12(b)(6) articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) governs dismissal for failure to state a claim upon which relief can be granted under § 1915(e)(2)(B). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk,* 99 F.3d at 197).

## III. ANALYSIS

Jackson brings this action pursuant to 42 U.S.C. § 1983. (Compl. at 3.) In order to state a claim upon which relief can be granted under § 1983, Jackson must allege that a "person" acting under color of state law deprived her of her rights secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Section 1983 itself is not a source of substantive rights, but merely provides a method for vindicating

federal rights that are conferred by the law or Constitution of the United States.

Jackson claims that defendants violated her "civil and human rights" and "freedom of speech." But Jackson does not specify the constitutional basis for the civil and human rights she claims were violated by defendants, nor do her allegations support a violation of the First Amendment. While Jackson's *pro se* complaint is entitled to liberal construction, the Court is not required to construct factual allegations or claims on her behalf. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). That said, this case is subject to dismissal for the separate reasons that defendants are immune from suit and Jackson fails to state a claim against them upon which relief can be granted.

### 1. Judge Holcomb is immune from suit

Jackson seeks money damages from Holcomb, but judges are immune from suit for actions taken in their judicial capacities even if they acted erroneously or in bad faith. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (per curiam). Judicial immunity can only be overcome by a showing that the judge's actions at issue were "nonjudicial," or that the judge acted without jurisdiction. *Id.* at 11–12. A judge "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]" *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).

Jackson's allegation against Holcomb is that he did not sign a piece of paper that he should have signed in her domestic violence case which would have caused the state court docket to reflect that she pled guilty to disorderly conduct. (Doc. No. 1-1 at 7–8.) Holcomb's act, or failure to act, is clearly related to his role as a judicial officer in Jackson's domestic violence case. Jackson contends that Holcomb acted with malice by allegedly failing to complete paperwork to change her charge from domestic violence to disorderly conduct. But a judge's

motivation does not change a judicial act to a nonjudicial act. *See Forrester v. White*, 484 U.S. 219, 227–28, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). Even construing the complaint liberally in Jackson's favor, there are no allegations from which this Court can infer that Holcomb acted outside of his judicial capacity or lacked jurisdiction with respect to Jackson's domestic violence case. Holcomb is immune from Jackson's suit and is dismissed from this case pursuant to § 1915(e)(2)(B).[4]

### 2. Laria is immune from suit

According to the complaint, Laria is the clerk of courts in the court where her domestic violence charge was brought. Jackson's § 1983 claim against Laria is based upon the factual allegation that he failed to transmit information to BCI regarding the docket entry in her criminal case in April 2012 indicating that she pled guilty to disorderly conduct. (Doc. 1-1 at 8–9.)

As an employee of the court system, Laria is entitled to quasi-judicial immunity from suit for actions taken in connection with his duties as clerk of courts because his duty to transmit the information on the criminal docket to appropriate authorities is a part of the judicial function. *See Sampson v. City of Xenia*, 108 F. Supp. 2d 821, 829–830 (S.D. Ohio 1999) (finding clerk immune from suit for alleged failure to send the judge's dismissal order to the jail since dissemination of that ruling constitutes an integral part of the judicial process) (collecting cases); *Mwonyonyi v. Gieszl*, No. 89-5495, , 1990 WL 10713 (6th Cir. Feb. 9, 1990) (finding deputy

---

[4] Even if Holcomb were not immune from suit, Jackson's § 1983 claim against him is barred by the two-year statute of limitations that applies to § 1983 claims in Ohio. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). The limitations period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988). This case was filed on July 30, 2018. Jackson was aware of her claims against Holcomb long before July 30, 2016, and the state court docket was updated on April 11, 2012, to reflect that she pled guilty to a disorderly conduct charge. Even if a case or controversy against Holcomb remained after April 11, 2012, her claim is barred by the two-year statute of limitations. Jackson claims that the ill-effects of Holcomb's alleged unconstitutional conduct continue until the present time. But "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert v. State of Ohio Dep't of Transp*., 172 F.3d 934, 940 (6th Cir. 1999) (citation and internal quotation marks omitted).

clerk of court entitled to absolute quasi-judicial immunity from § 1983 liability for failing to file a document with the district court because the clerk's duties are related to the district court's judicial process) (citing among authority *Foster v. Walsh*, 864 F.2d 416, 417–18 (6th Cir. 1988) (per curiam)). Court personnel are not entitled to quasi-judicial immunity if they act maliciously or corruptly. *Sampson*, 108 F. Supp. 2d at 829–30 (quoting *Brown v. Glasser*, No. 88-3993, 1989 WL 20614 (6th Cir. Feb. 28, 1989)).

Jackson alleges that Laria failed to transmit the information to BCI regarding the nature of the charge to which she pled guilty and he did not think it was important enough to do so. (Doc. No. 1-1 at 8–9.) But there are no factual allegations from which this Court can infer that Laria's failure to act was corrupt or malicious, and his simple failure to transmit a document or information does not eliminate his entitlement to quasi-judicial immunity. *Sampson*, 108 F. Supp. 2d at 829–30; *see also Saum v. Savage*, No. 2:13-CV-00872, 2014 WL 3105010, at *3 (S.D. Ohio July 7, 2014) (finding quasi-judicial immunity applies to both affirmative actions and omissions, such as not sending an order) (collecting cases). Laria is entitled to quasi-judicial immunity from Jackson's allegations, and her § 1983 claims against him are dismissed pursuant to § 1915(e)(2)(B).

### 3. BCI is immune from suit

Jackson's claim against BCI is also subject to dismissal. The Eleventh Amendment of the United States Constitution bars suit against a state and its agencies unless the state has expressly waived its sovereign immunity or consented to be sued in federal court. *Grinter*, 532 F.3d at 572 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). When Congress enacted § 1983, it did not abrogate a state's Eleventh Amendment immunity. *Rodgers v. Mich. Dep't of Corr.*, 29 F. App'x 259, 260 (6th Cir. 2002) (citing *Will*,

491 U.S. at 66–71). And a state or state agency is not a "person" subject to suit under § 1983. *See Will*, 491 U.S. at 62–68.

"BCI is an investigative law enforcement agency for the state of Ohio." *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 851 n.30 (N.D. Ohio 2011); *see also Falzone v. Licastro*, No. 1:10CV02918, 2012 WL 711273, at *2 (N.D. Ohio Mar. 4, 2012) ("(BCI) [is] a state agency[.]"). As an agency of the State of Ohio, BCI is not a person subject to suit under § 1983, and the State of Ohio has not waived its Eleventh Amendment sovereign immunity or consented to be sued in federal court under § 1983. *See Mattox v. City of Jefferson*, No. 1:04 CV 2257, 2007 WL 120651, at *3 (N.D. Ohio Jan. 10, 2007). Accordingly, BCI is dismissed from this action pursuant to § 1915(e)(2)(B).

## IV. CONCLUSION

For all the foregoing reasons, this case is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B). Jackson's motion to proceed *in forma pauperis* is GRANTED. (Doc. No. 2.) The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: December 11, 2018

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**